IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH SMITH, # B-32032, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 15-cv-1277-MJR |
| | ) |
| KIMBERLY BUTLER, | ) |
| REBBECCA COWAN, | ) |
| COUNSELOR WOODS, | ) |
| SHERRY BENTON, | ) |
| GLADYSE C. TAYLOR, | ) |
| and JOHN BALDWIN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He is serving a 25-year sentence for murder. Plaintiff claims that Defendants have denied his requests to be placed in protective custody, even though he has received death threats from enemy gang members. He seeks injunctive relief to require Defendants to house him in protective custody and separate him from inmates affiliated with the gangs that have ordered an attack on him. Because Plaintiff labels his pleading as both a "Complaint" and a "Motion for Injunctive Relief," the Clerk shall be directed to add a docket notation to reflect that Plaintiff's motion seeking injunctive relief is pending.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which requires the Court to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an

immune defendant. Furthermore, because Plaintiff has accumulated four "strikes" for having brought prior cases that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted,[1] he cannot proceed in this action unless he either pays the full $400.00 filing fee in advance, or qualifies to proceed *in forma pauperis* ("IFP") by showing that he is in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g).

**The Complaint**

Plaintiff states that he is an ex-member of the Gangster Disciples, under the "6 point star flag" (Doc. 1, p. 3). When Plaintiff was housed in segregation in December 2012, he was placed with a cellmate (Calhoun) who is a member of the Mickey Cobras, under the "Fin Ball 5-point star." *Id*. Plaintiff had been accused (but not convicted) of involvement in the killing of a Vice Lord associate of the Fin Ball 5-point star organization. Calhoun is in prison for having killed a Gangster Disciple. Plaintiff and Calhoun got into a fight, after which they were separated. Plaintiff has received death threats from Calhoun since that time, both at Menard and while confined at Stateville Correctional Center.

Plaintiff was back in segregation from September 2014 through November 2014, and overheard Calhoun threatening to "beat [Plaintiff's] brains in" because Plaintiff had assaulted Calhoun's co-defendant and fellow gang member (Kevin Smith, a/k/a/ "Tango") (Doc. 1, p. 4). When Plaintiff left segregation on November 17, 2014, he checked in to protective custody ("PC"). However, because Defendant Cowan purposely housed him with belligerent cellmates, he was "forced" to sign himself out of PC.

In May 2015, inmates associated with the Mickey Cobras verbally threatened

---

[1] These cases are: *Smith v. Lee*, Case No. 02-cv-3944 (N.D. Ill. dismissed June 21, 2002); *Smith v. Aramark Food Mgmt.*, Case No. 04-cv-515 (N.D. Ill. dismissed Feb. 5, 2004); *Smith v. Geatz*, Case No. 09-cv-733 (S.D. Ill. dismissed Sept 24, 2010); and *Smith v. Hardy*, Case No. 11-cv-4761 (N.D. Ill. dismissed Sept. 24, 2010).

Plaintiff that he had better "get out [of] the East House" (where he is placed in Menard) (Doc. 1, p. 5). Around the same time, Plaintiff learned that another former cellmate (Manning), was planning an attack on him when the chow lines began to run. Plaintiff told prison staff about the threats, and checked himself into PC. However, he was "kicked out" of PC around the end of August 2015, and Defendant Woods has not permitted him to sign back in (Doc. 1, p. 6). Plaintiff includes a summary of an August 11, 2015, hearing on his PC request, signed by Defendant Benton, concluding that Plaintiff had not provided sufficient verifiable information to warrant retaining him in PC (Doc. 1, p. 12).

Since then, two "kites" containing death threats were delivered to Plaintiff's cell (Doc. 1, p. 11), and one of Plaintiff's enemies has issued an order to "split [his] head open, and hit [him] hard at any possible occasion" (Doc. 1, p. 6). Plaintiff asserts that any gang member under the "5-point star" can do the hit on him and collect a bounty. The Defendants have wrongly concluded that because Plaintiff's enemies are in a different cell house, they are not a threat to him – he notes that his enemies' fellow gang members are housed in every cell house at Menard. Plaintiff tried to show one of the kites to Defendant Woods, but she "had no concern" (Doc. 1, p. 10). She has refused Plaintiff's "numerous" requests for a PC sign in sheet, and told him to "beat it" after his most recent request for PC in October 2015 (Doc. 1, p. 6). After receiving another kite, Plaintiff began drafting the instant complaint (Doc. 1, p. 10).

Plaintiff had been approved for PC on several occasions in 2004, 2005, 2006, and 2007, based on problems with some of the same enemies. He states that he is normally transferred each year because of his prison classification. He now requests an order that he be placed in protective custody again, and isolated from any gang members affiliated with the "5-point star" or the Black Disciples, until he can be transferred to protective custody at Pontiac or

Stateville Correctional Center.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Accepting Plaintiff's allegations as true, his complaint survives threshold review. At this early stage, he states a colorable Eighth Amendment claim that Defendants Butler, Cowan, Woods, and Benton have failed to protect him from danger of an impending attack by one of the fellow inmates who have issued threats against him, or by an affiliated inmate who may carry out the threats. It appears that Defendants Taylor and Baldwin are appropriate parties to implement any injunctive relief that may be ordered, should Plaintiff prevail on his claim. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). In order for a plaintiff to succeed on a failure to protect claim, he must show that he was incarcerated under conditions posing a substantial risk of serious harm, and the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove prison officials were aware of a specific, impending and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In *Farmer*, the Supreme Court indicated injunctive relief would be an appropriate remedy for a prisoner who received a credible threat of attack by another inmate. *Farmer*, 511 U.S. at 850-51 (district court on remand should address whether injunction would be appropriate based on evidence to be adduced regarding the likelihood of transsexual inmate's transfer to a setting

where he could face greater threat). Prior to *Farmer*, courts recognized a prisoner need not wait until he is actually assaulted before he may obtain relief. *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980); *Woodhouse v. Com. of Va.*, 487 F.2d 889, 890 (4th Cir. 1973); *see also Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001).

It is unclear from the complaint whether Plaintiff informed any of the Defendants of the most recent threats against his life. Additional factual development is appropriate to determine whether injunctive relief is warranted, thus, the action shall proceed for further review.

**Plaintiff's Eligibility to Proceed IFP**

Plaintiff incurred the obligation to pay the filing fee for this action when he filed the case. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). However, when he submitted his complaint/motion for injunctive relief, he did not pay the filing fee, nor did he submit a motion for leave to proceed IFP or affidavit of indigency. Although he does not enumerate his litigation history in the complaint, he references the "three strikes" provision of 28 U.S.C. § 1915(g) and asserts that he is in imminent danger of serious physical injury. The Court interprets this as an acknowledgement by Plaintiff that he has "struck out," and reflects his understanding that he cannot proceed IFP in this action unless he satisfies the imminent danger requirement of § 1915(g). Based on the allegations of the complaint as outlined above, Plaintiff has made the required showing that he faces imminent danger of serious physical injury from the inmates who have threatened his life, and their gang associates. He is eligible to proceed IFP in this action under the provisions of § 1915(g).

Plaintiff was informed by the Clerk that he must either pay the fee or submit a completed motion for leave to proceed IFP and inmate trust fund statement within 30 days, or this action would be subject to dismissal (Doc. 2). Out of an abundance of caution, this action

shall proceed for further review without delay – but Plaintiff must still meet his obligations with regard to the filing fee. Therefore, Plaintiff **SHALL FILE** his completed motion for leave to proceed IFP in this action, together with his inmate trust fund statement for the six-month period prior to the filing date of this case, no later than **December 16, 2015**. If Plaintiff fails to timely file his IFP motion, this action shall be subject to dismissal for failure to comply with an order of the Court. *See* FED. R. CIV. P. 41(b).

**Disposition**

The Clerk is **DIRECTED** to add a docket entry reflecting that Plaintiff's complaint contains a motion for preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65(a). This motion shall be referred to United States Magistrate Judge Stephen C. Williams, who shall resolve the request for preliminary injunction as soon as practicable, and issue a report and recommendation. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to Judge Williams.

**IT IS FURTHER ORDERED** that the Clerk of Court shall take appropriate steps in coordination with the U.S. Marshals Service, to effect formal, **PERSONAL SERVICE** of summons, the complaint and this order upon each Defendant at his or her work address, as provided by Plaintiff. The Court will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's motion for a preliminary injunction.

The United States Marshals Service is **APPOINTED** pursuant to Federal Rule of Civil Procedure 4(e) to effect service. The Clerk is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **BUTLER,**

**COWAN, WOODS, BENTON, TAYLOR,** and **BALDWIN.** The Clerk shall issue the completed summons, and prepare a service packet for each Defendant consisting of: the completed summons, the completed form USM-285, a copy of the complaint (Doc. 1), which contains the motion for preliminary injunction, and this Memorandum and Order. The Clerk shall deliver the service packets for each Defendant to the United States Marshals Service for personal service on each Defendant.

Pursuant to Federal Rule of Civil Procedure 4, **within 14 days of the date of this Order**, the United States Marshals Service **SHALL PERSONALLY SERVE** upon Defendants **BUTLER, COWAN, WOODS, BENTON, TAYLOR,** and **BALDWIN,** the service packets containing the summons, form USM-285, a copy of the complaint (Doc. 1), which contains the motion for preliminary injunction, and this Memorandum and Order. **LEAVING THE SUMMONS WITH THE PRISON'S LITIGATION COORDINATOR IS NOT SUFFICIENT – each Defendant must be personally served**. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In order to assist the Court in its resolution of the motion for preliminary injunctive relief (contained within the complaint), Defendants **BUTLER, COWAN, WOODS, BENTON, TAYLOR,** and **BALDWIN SHALL FILE A RESPONSE** to the motion within 14 days of the date of service of the summons.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.

Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his expected application to proceed *in forma pauperis* is granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application is made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney shall be deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 18, 2015**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court
