IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENNETH SMITH,                          )
                                        )
                    Plaintiff,          )
                                        )
vs.                                     )   Case No. 15–cv–1277–MJR–SCW
                                        )
KIMBERLY BUTLER,                        )
WOODS,                                  )
SHERRY BENTON,                          )
GLADYSE C. TAYLOR,                      )
JOHN BALDWIN, and                       )
JEANNETTE COWAN                         )
                                        )
                    Defendants.         )

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Kenneth Smith has sued multiple defendants based on the denial of protective custody ("PC") placement at Menard Correctional Center. (Doc. 1). This matter has been referred pursuant to 28 U.S.C. 636(b)(1)(B) to the undersigned for an evidentiary hearing. An evidentiary hearing was held on December 22, 2015 regarding Plaintiff's Motion for Injunctive Relief. (Doc. 4). Plaintiff appeared pro se. Melissa Jennings appeared for Defendants. Defendants called Jeannette Cowan and Officer Dillingham. During the hearing, Plaintiff attempted to use two affidavits that had not previously been submitted to the Court or otherwise disclosed. After reviewing the objection and Plaintiff's response, the undersigned will consider the affidavits submitted by Plaintiff. (Doc. 31).

## Factual Background

Plaintiff is classified as a level E inmate, meaning that he is a high escape risk and subject to transfer between maximum security institutions. (Doc. 11-1, p. 2). His status also limits where he

might be housed at Menard; Plaintiff may only be placed in segregation, protective custody or specific galleries of the East Cell House.  (Doc. 11-1, p. 2).

Plaintiff's request for injunctive relief is contained within his Complaint.  Specifically, Plaintiff requests that the Court compel Defendants to provide him with protective housing.  (Doc. 1, p. 3).  He alleges that an inmate named Kenneth Calhoun wants to hurt him.  (Doc. 1, p. 3). Calhoun is "under the fin ball 5-point star and a member of the mickey cobras."  (Doc. 1, p. 3).  The Vice Lords and the Mickey Cobras are affiliated under the 5-point flag.  (Doc. 36, p. 10).  Plaintiff is a member of the Gangster Disciples under the 6 point star flag, although he alleges that the Illinois Department of Corrections (IDOC) has erroneously categorized him as a Black Gangster, a separate gang.  (Doc. 1, p. 3).   Plaintiff got into an altercation with Calhoun in December of 2012.  (Doc. 1, p. 4).

Plaintiff also alleges that Calhoun's co-defendant in his criminal case, an inmate named Kevin Smith, a.k.a. Tango, was housed in Plaintiff's segregation unit from September 17, 2014 through November 17, 2014 and made threats against Plaintiff during that time.  (Doc. 1, p. 4). Plaintiff checked himself into PC as a result of these threats, but was "forced" to check himself back out due to the actions of some of the defendants.  (Doc. 1, p. 4).

On May 28, 2015, Plaintiff received threats from the Mickey Cobras and Paul Manning, a former cell mate.  (Doc. 1, p. 5).  He checked into protective custody on May 28th, (Doc. 11-1, p. 2), but was told to "beat it" in August of 2015.  (Doc. 1, p. 6).  Although the Complaint contains no more detail about this incident, Plaintiff attached a hearing report from the Administrative Review Board.  (Doc. 1, p. 12).  The ARB held a hearing on August 11, 2015 and interviewed Plaintiff as part of the hearing.  (Doc. 1, p. 12).  The ARB also reviewed the protective custody vote sheet, which indicated that there was not sufficient verifiable information to warrant a protective custody

placement.  (Doc. 1, p. 12).  Ultimately, the ARB concluded that Plaintiff had not provided sufficient verifiable information to warrant placement in protective custody.  (Doc. 1, p. 12).

Plaintiff then received two kites threatening him.  (Doc. 1, p. 6).  The first kite states "Dig o fat ass nigga we aint gonna tell you no mo leave the cell-house or [illegible][sic]" (Doc. 1, p. 11).  The second kite states "look motherfucker you think we playing with you. Get out or die.  We may get you in P.C. Plug in or die." (Doc. 1, p. 11).  Plaintiff chose to file suit at that time.  Plaintiff requests to be moved out of east cell house, to be placed into protective custody until he is transferred from Menard, and to be isolated from all past or present members of the five point star or the Black Disciples Nation.  (Doc. 1, p. 8).

Plaintiff further alleges that he has been allowed to check into protective custody for similar reasons as the ones alleged above in the years 2004, 2005, 2006 and 2007.  (Doc. 1, p. 10).

Jeannette Cowan, correctional case work supervisor at Menard Correctional Center, testified at the hearing.  (Doc. 36, p. 25).  As part of her duties, Cowan reviews inmate requests for protective custody.  (Doc. 36, p. 26).  When an inmate requests protective custody, he is immediately moved to the protective custody unit and an assessment is conducted.  Cowan testified that when investigating protective custody requests, she checks an inmate's master file, which includes his keep separate from ("KSF") list, and offender tracking system (OTS).  (Doc. 36, p. 33).  The Intel unit has access to other information that Cowan does not, including gang affiliations.  (Doc. 36, p. 46).  Usually Cowan attempts to interview the inmate in person with Intel present so that they may both ask questions at the same time.  (Doc. 36, p. 27).  Cowan then prepares the vote sheet, which includes the information submitted by the prisoner, as well as summaries of the interviews conducted by Cowan and Intel and any other relevant information.  (Doc. 36, p. 27-28).  Once the counselor and the intelligence unit make a recommendation on the request, the CAO, the clinical service supervisor and the assistant warden vote on the request.  (Doc. 36, p. 28).  The prisoner may then grieve the

outcome to the ARB, which may conduct a hearing on the matter. (Doc. 36, p. 28). An inmate will stay in protective custody until a final decision by the ARB.

After Plaintiff checked into protective custody in May 2015, Cowan interviewed him on June 3, 2015. While she was able to verify Plaintiff's claims about Calhoun, she could not verify that Plaintiff had other enemies at Menard. She also noted that Plaintiff usually seeks protective custody around the time he is due for his security transfer, because being in protective custody means that Plaintiff may end up at Pontiac Correctional Center and not Stateville. Intel responded that they believed Plaintiff was trying to manipulate his upcoming transfer by checking into PC. Cowan could not substantiate any of Plaintiff's allegations. While Calhoun is on Plaintiff KSF list and housed at Menard, he was always housed in another housing unit. (Doc. 36, p. 45). Calhoun is also not listed as gang affiliated in OTS. (Doc. 36, p. 34). Plaintiff cited Paul Manning as a former cellmate that he had issues with, but Cowan could not verify that they were ever in a fight, as Plaintiff claims, because there is no disciplinary ticket or healthcare records regarding any fight between them. (Doc. 36, p. 34). Additionally, Cowan could not identify a Kevin Smith who fit Plaintiff's description at Menard. (Doc. 36, p. 33-34). None of the minimus numbers of any of the Kevin Smiths at Menard matched Calhoun's minimus number. (Doc. 36, p. 33-34).

The Warden, Kimberly Butler, approved the denial on June 4, 2015, and Plaintiff grieved the denial on June 5, 2015. (Doc. 11-1, p. 3). The ARB then held a hearing on Plaintiff's request on August 11, 2015. (Doc. 11-1, p. 3). They ultimately denied the request, as discussed more fully above. (Doc. 11-1, p. 3). After the denial, Plaintiff was returned to general population on August 17, 2015. (Doc. 11-1, p. 3).

On November 26, 2015, nearly a month after he filed the Complaint in this case, Plaintiff again requested protective custody. (Doc. 11-2, p. 4). As part of the protective custody process, he was interviewed in tandem by Cowan and Officer Dillingham. (Doc. 36, p. 57). However, Plaintiff

4

testified that he did not believe that Cowan was fair or professional and did not want to talk to her. (Doc. 36, p. 64, 71). Dillingham does not recall Plaintiff asking Cowan to leave. (Doc. 36, p. 64). Cowan therefore had no information regarding Plaintiff's claims and could not substantiate the threat; she relied on Intel to do so by verifying the kites Plaintiff had submitted. (Doc. 36, p. 42). Cowan refused to leave the interview, and so Plaintiff did not answer questions posed to him by either Cowan or Dillingham. (Doc. 36, p. 58). As a result, Plaintiff's allegations could not be substantiated.

Dillingham also testified that he believed that Plaintiff himself wrote the kites as a result of comparing handwriting samples of some of Plaintiff's other writing. (Doc. 36, p. 58-59). But Dillingham testified at the hearing that he was not 100% that the handwriting samples are the same; otherwise he would have written a disciplinary report on Plaintiff. (Doc. 36, p. 58-59). Plaintiff denies authoring the kites. Because Plaintiff had not cooperated with the interview, Dillingham had nothing to go off of other than the kites. (Doc. 36, p. 59). Dillingham had no information from which to conclude that Plaintiff's life was in danger. (Doc. 36, p. 62).

Butler denied protective custody placement on December 1, 2015. (Doc. 11-2, p. 4). Plaintiff then appealed the decision to the ARB on December 3, 2015. (Doc. 11-2, p. 4). The ARB held another hearing on the matter on December 14, 2015, and ultimately determined that there was "not sufficient information to warrant the offender's retention in Protective Custody."

Plaintiff denies that he was attempting to manipulate the transfer process because he was told when he came to Menard in June 2014 that he would only be transferred every two years and he has not been notified that he is due to be transferred soon. (Doc. 36, p. 7-8). Plaintiff also testified that the only prison he feels that he needs protective custody in is Menard. (Doc. 36, p. 12). However, Plaintiff also testified that he signed into protective custody at Stateville in August 2013. (Doc. 36, p. 14).

Cowan testified that there are only 58 beds in the Menard protective custody unit, and that they cannot give protective custody to every inmate that requests it. (Doc. 36, p. 27). Any threat alleged by an inmate seeking protective custody must be substantiated due to the limited bed space. (Doc. 36, p. 30). There's also an overflow area in the Receiving and Classification (RC) unit or the health care unit. (Doc. 36, p. 27). Because Plaintiff is a level E inmate, he cannot stay in the RC unit; he must be housed in the protective custody unit or the healthcare unit. (Doc. 36, p. 27). Dillingham and Cowan also testified that there are gang members in all housing units at Menard and that it is not practicable to isolate one inmate from all gangs or all opposing gang members while in general population. (Doc. 36, p. 40, 62).

At the hearing, Plaintiff submitted two affidavits. The first affidavit was from inmate Robert Woods, and testified that despite being approved for protective custody at two other institutions, when he requested it at Menard, Cowan used inappropriate language and told him that she would not approve him for protective custody unless he got into an actual fight. (Doc. 31, p. 3). Plaintiff also submitted an affidavit from Salvador Rubio, who stated that he wished to check into P.C. on the basis of threats from an inmate named "criminal," but that Cowan told him he needed to be assaulted to be considered for P.C. (Doc. 31, p. 6). Plaintiff himself offered no testimony that Cowan ever told him he needed to be in a fight to be approved for protective custody.

### Analysis

The purpose of a preliminary injunction is to preserve the status quo until the merits of a case may be resolved. *Indiana Civ. Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001). *Accord Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek*

*v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."); *Girl Scouts of Manitou Cnty., Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) ("[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (internal quotation marks omitted).

To secure a preliminary injunction, a movant must show (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without the injunction, (3) the harm he would suffer is greater than the harm that the preliminary injunction would inflict on the defendants, and (4) the injunction is in the public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20). The considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted. *Judge*, 612 F.3d at 546. Mere speculation will not be sufficient to support a preliminary injunction. *Baird v. Hodge*, 605 F. App'x 568, 570 (7th Cir. 2015) (denying a former cop's request for a preliminary injunction ordering protective custody on the grounds that the Plaintiff had only shown one inmate who is a threat to him and that harm from any other inmate was speculative).

Here, the undersigned finds that Plaintiff has not shown that he is likely to succeed on the merits of the case. Testimony at the hearing established that the Defendants investigated Plaintiff's complaints to the best of their ability, but were unable to confirm any threats. Cowan and intel both did parallel investigations. Plaintiff's case was reviewed by both the Warden on then separately by the ARB. Plaintiff has not alleged that any step of the process was skipped. He has only alleged that he disagrees with the results of that process. There is no evidence that Defendants were deliberately indifferent, that is, there is no evidence that they knew of a credible and verifiable threat

to Plaintiff's safety and failed to take action.  Defendants' testimony was that they could not verify any of the threats Plaintiff has alleged.  Therefore Plaintiff is unlikely to succeed on the merits of this case.

Furthermore, Plaintiff himself has not established that he is at risk of serious harm.  Plaintiff has identified three specific threats- Calhoun, Manning, and Smith.  Calhoun has been placed on Plaintiff's KSF list and housed apart from Plaintiff.  That is all staff is required to do.  Cowan testified that she could not verify that Manning and Plaintiff had been in a fight because there was no record of it, and Plaintiff did not actually testify that he and Manning had been in a fight or that Manning currently poses a threat to him.  And staff has not been able to substantiate Plaintiff's claims against inmate Kevin Smith because they have been unable to identify that inmate based on the information provided by Plaintiff.  Plaintiff refused to participate in interviews on his allegations of threats and was unable to provide staff with names of inmates making threats, other than Calhoun, Manning, and Smith.  Thus Plaintiff's information is insufficient to establish that he is at serious risk of substantial harm from remaining in general population.  As to Plaintiff's testimony regarding the generalized levels of gang threats he receives, *Baird* makes it clear that the threats must be specific.  The kites Plaintiff received do not contain names or dates or places, and intel has been unable to verify them.  In the absence of more specific evidence of a concrete threat, Plaintiff has not shown that he is in danger of serious irreparable harm.

The undersigned recommends that the District Court **DENY** Plaintiff's Motion for a preliminary injunction.  (Doc. 4).  Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***See, e.g., Snyder v.***

*Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).  <u>Objections to this Report and Recommendation</u>

<u>must be filed on or before February 8, 2016</u>.  *See* Fed. R. Civ. P. 6(d); SDIL-LR 5.1(c).


IT IS SO RECOMMENDED.

DATE: <u>January 22, 2016 </u>                                       <u>/s/ *Stephen C. Williams*   </u>
                                                                                       **STEPHEN C. WILLIAMS**
                                                                                       United States District Judge