IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |  | |
|---|---|---|---|
| KENNETH SMITH, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | Case No. 15-cv-1277-MJR-SCW | |
| | ) | | |
| KIMBERLY BUTLER, | ) | | |
| COUNSELOR WOODS, | ) | | |
| SHERRY BENTON, | ) | | |
| GLADYS TAYLOR, | ) | | |
| JOHN BALDWIN, and | ) | | |
| JEANETTE COWAN, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

*Pro se* Plaintiff Kenneth Smith, an inmate formerly housed at the Menard Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 based on the denial of protective custody placement by a number of officials at Menard.  (Doc. 1). Plaintiff filed a number of motions for preliminary injunctive relief related to protective custody, and those motions are now before the Court for review (Doc. 38; Doc. 49; Doc. 63).  For the reasons set forth below, the Court **DENIES** all three injunction motions.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2015, Plaintiff filed the present suit, alleging violations of his Eighth Amendment rights.  (Doc. 1; Doc. 3, p. 4).  In sum, Plaintiff alleges he has received death threats from members of a rival gang and that Defendants have denied his requests to be placed in protective custody related to those threats.  (Doc. 1, p. 3 –

11). In its threshold review order, this Court found that Plaintiff had stated "a colorable Eighth Amendment claim that [certain] Defendants . . . have failed to protect him from danger of an impending attack by one of the fellow inmates who have issued threats against him, or by an affiliated inmate who may carry out the threats." (Doc. 3, p. 4).

In the course of this suit, Plaintiff has filed four motions seeking injunctive relief (Docs. 4, 38, 49, 63). A hearing was held on the first motion (Doc. 4), dated November, 18, 2015, and that motion will be ruled on by separate order today—the Court does not address the November 18, 2015 motion (Doc. 4) by way of this order. This order will rule on Plaintiff's three other motions for injunctive relief, filed on January 25, 2016 (Doc. 38), February 22, 2016 (Doc. 49), and June 13, 2016 (Doc. 63), respectively.

**1. January 25, 2016 & February 22, 2016 Motions**

In the January 25th (Doc. 38) and February 22nd (Doc. 49) motions, Plaintiff seeks to be transferred out of Menard. After being kicked out of protective custody on January 5, 2016, Plaintiff admits that he refused housing in order to avoid going to the East Cell House where Level E inmates like Plaintiff are housed. (Doc. 38, p. 1). According to the Plaintiff, Defendant Cowan asked him if he was going to East House, to which he responded he was not. (*Id*.). He alleges Cowan then told him that he could not go into protective custody. (*Id*.). Plaintiff claims that after Cowan left, another correctional officer, who is not a defendant, started "making threats" directed at Plaintiff and tried to take Plaintiff's property. (*Id.*). He alleges another non-defendant officer took his legal property, and he claims that his property will be taken each time he refuses

housing at Menard. (Doc. 49, p. 2). Plaintiff also claims that he has been denied medical care for a particular injury. (Doc. 38, p. 2). However, he acknowledges seeing medical staff every month in the cell house, and says that he sees a physician every six weeks. (*Id.*). In addition, Plaintiff makes allegations of threats from Menard staff. These allegations consist of unspecified threats from defendants and non-defendants. (*See* Doc. 38, p. 2; Doc. 49, p. 2). In one of these allegations, Plaintiff states that he "sees the start of Menard Administration starting to harass him due to the filings [sic] of this suit." (Doc. 38, p. 2). Given these problems, Plaintiff asks to be transferred from Menard to another Illinois facility. (Doc. 38, p. 3; Doc. 49, p. 3; Doc. 50, p. 4).

In response to these motions, Defendants point to a prison Adjustment Committee Final Report regarding a proceeding pertaining to Plaintiff for the offenses of "Intimidation or Threats" and "Disobeying a Direct Order." (Doc. 45-1, p. 1). The witnesses who came before the Committee for that matter testified that Plaintiff did not want to be housed in East House, but instead wanted to be placed in protective custody. (*Id.*). The Committee found Plaintiff guilty of those offenses, specifically observing that Plaintiff improperly refused housing at the East House and said he would kill someone if sent there. (*Id.*). Defendants assert that Plaintiff has a history of manipulating prison regulations to obtain a transfer to a prison he desires. (Doc. 45, p. 2; Doc. 51, p. 3).

2. **June 13, 2016 Motion**

The latest in Plaintiff's series of preliminary injunction requests was filed on June 13, 2016. In addition to repeating most of the other allegations in his past motions,

Page **3** of **7**

Plaintiff again alleges generalized threats by staff and claims that staff are threatening to kill him. (Doc. 63, p. 2-3). He claims he is in imminent danger due to those threats. (*Id.* at p. 3). As always, Plaintiff again seeks a transfer out of Menard. (*Id.* at 3-4). However, Plaintiff also claims he was involved in a sexual relationship with a female correctional officer at Menard (Doc. 63, p. 2), which he previously detailed at length in a filing with the Court. (*See* Doc. 61). In addition to retaliation for filing the underlying suit, Plaintiff now claims that Menard officials are threatening him in retaliation for his relationship with the female officer. (Doc. 63, p. 2).

## LEGAL STANDARD

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, **520 U.S. 968, 972 (1997).** To obtain a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits of this case, (2) that he is likely to suffer irreparable harm without the preliminary injunction, (3) that the harm he would suffer without a preliminary injunction is greater than the harm the injunction would inflict on the defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, **612 F.3d 537, 546 (7th Cir. 2010).** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Id.* **at 546.**

In the context of prisoner civil rights litigation, there are further restrictions on the scope of the Court's injunctive power. The scope of the Court's authority to enter an

injunction in the corrections context is circumscribed by the Prison Litigation Reform Act. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under that Act, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *See* 18 U.S.C. § 3626(a)(2); *see also Westefer*, 682 F.3d at 683 (the Prison Litigation Reform Act enforces the point that "prison officials have broad administrative and discretionary authority over the institutions they manage").

## ANALYSIS

The Court finds that Plaintiff is not likely to succeed on the merits because his requests for preliminary injunctive relief are not related to the operative claims in this case. Plaintiff's sole claim in this case is based on Eighth Amendment violations regarding the failure to protect Plaintiff from *other inmates*. However, Plaintiff's claims in the motions before the Court concern retaliation by Menard officials related to Plaintiff's initial lawsuit, his decision to refuse housing in the East House, and his alleged love affair with a Menard officer. As evidenced in the merits review order of Plaintiff's operative complaint, Plaintiff has no active claims based on those allegations at this time, so there is no basis for the Court to provide Plaintiff the relief he seeks. In addition, Plaintiff's request to amend his complaint, which is currently pending before Magistrate Judge Williams, also doesn't seem to raise a retaliation claim linked to those points, instead raising claims under the Eighth and Fourteenth Amendments.

Even if the motions now before the Court were somehow related to Plaintiff's

claims or the claims in his proposed amended complaint, the Court finds that the largely generalized allegations in the Plaintiffs' motions render Plaintiff unable to demonstrate that he is likely to suffer irreparable harm without injunctive relief. Though Plaintiff has made some allegations regarding specific acts of retaliation, the vast majority of the allegations concern vague, non-specific threats from prison officials. In this vein, neither generalized averments of "threats" nor Plaintiff's personal belief that he "sees the start" of harassment are sufficient to demonstrate the likelihood of irreparable injury. *See Winter*, **555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy . . . .").**

Additionally, the scope of the injunctive relief sought by Plaintiff is too broad. Assuming that Plaintiff's allegations of retaliation by Menard officials are true, an injunction ordering Plaintiff transferred out of Menard altogether would be in contravention of Congress's mandate that injunctions in prisoner cases be narrowly drawn. None of the allegations, if true, warrant a wholesale transfer out of Menard; there are less intrusive remedies, like transfer to another house in Menard and isolation from the officials in question, than the broader remedy that Plaintiff seeks. The Court will certainly not grant a transfer when the problems alleged by Plaintiff appear to largely be the result of his own refusal to accept housing—a refusal admitted by Plaintiff.

Further, based on the number of motions and other pleadings filed by Plaintiff, the Court finds that Plaintiff is having no problem litigating his suit at Menard. In fact,

the number of motions filed by Plaintiff seeking the drastic remedy of a transfer, based on the allegations pleaded, lends support to the Defendants' suggestion that Plaintiff is manipulating the system in order to obtain a transfer to a facility he prefers. This Court will not be used as a tool for Plaintiff to move to his preferred correctional facility.

Over and above the defects above, all of Plaintiff's motions must be denied for another reason, namely that they are now moot. While all of his motions are a bit muddled, they all seem to seek a transfer from Menard to Pontiac Correctional Center. Smith was transferred to Pontiac in August 2016, so he no longer has any need for a transfer order from this Court. *See Higgason v. Farley*, **83 F.3d 807, 811 (7th Cir. 1996).**

## CONCLUSION

Because Smith hasn't shown sufficient irreparable harm to justify the injunctive relief he seeks, and because he has already obtained a transfer out of Menard either way, the Court **DENIES** Smith's motions for injunctive relief (Docs. 38, 49, and 63).

**IT IS SO ORDERED.**

**DATED:** September 27, 2016

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**